**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

PARIS RAYON BALLEW,          )
                                        )
        Petitioner,         )
                                        )
v.                            )        **No. 1:13-cv-01198-JDB-egb**
                                        )        **Cr. No. 1:09-cr-20407-JDB-1**
UNITED STATES OF AMERICA,     )
                                        )
        Respondent.      )

---

**ORDER DENYING AND DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

---

Before the Court is the *pro se* 28 U.S.C. § 2255 ("§ 2255") motion of Petitioner, Paris Rayon Ballew, to vacate, set aside, or correct his sentence (the "Petition"). (ECF No. 1).[1] Ballew, Bureau of Prisons ("BOP") register number 23188-076, is currently housed at the Federal Correctional Institution, Manchester in Manchester, Kentucky. The United States has filed a response in opposition. (ECF No. 18.) For the reasons discussed below, the Petition is DISMISSED.

I.      **BACKGROUND**

A.      **Case Number 09-cr-20407**

On September 30, 2009, a federal grand jury returned an indictment charging Ballew, who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, with knowingly possessing and receiving a firearm that had been shipped and

---

[1] Petitioner has one other outstanding motion, a motion for reconsideration. (ECF No. 14.) As the Petition is dismissed, this motion is DENIED AS MOOT.

transported in interstate commerce, in violation of 18 U.S.C. § 922(g). Redacted Indictment, *United States v. Ballew*, No. 09-20407 (W.D. Tenn. Sept. 30, 2009) (Criminal ("Cr.") ECF No. 4). A superseding indictment filed on March 15, 2010, retained the § 922(g) charge and added one count of knowing and intentional possession with intent to distribute approximately 281 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count of knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(2). (Redacted Indictment, Cr. ECF No. 52.) Attorney A. Russell Larson was appointed to represent Ballew. After Petitioner pleaded not guilty, a jury trial commenced on August 24, 2010. (Minute ("Min.") Entry, Cr. ECF Nos. 89–91, 94.) He was convicted on all counts. (Min. Entry, Cr. ECF No. 100.)

Following Ballew's conviction, the United States Probation Office conducted a presentence investigation and prepared a report ("PSR") in anticipation of sentencing. (*See* PSR.) As a juvenile, Petitioner was found delinquent with respect to three counts of aggravated robbery and one count of attempted aggravated robbery. (PSR at ¶ 22.) He was also convicted as an adult of one count of attempted aggravated robbery. (*Id.* at ¶ 23.) These convictions qualified the inmate as an armed career criminal under 18 U.S.C. § 924(e), which carries a mandatory minimum sentence of 180 months. (*Id.* at ¶ 23.) Further, the Probation Office concluded that Petitioner "used or possessed the firearm . . . in connection with . . . a controlled substance offense," subjecting him to an automatic offense level adjustment of 34. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.4(b)(3)(A) (2009);[2] *see* PSR at ¶ 18. Finally, because Ballew possessed a firearm in furtherance of a drug trafficking crime, he qualified for a mandatory minimum sentence of five years, "to run consecutive to any mandatory minimum

---

[2] The 2009 edition of the Sentencing Guidelines Manual was used in this case. (PSR at ¶ 10.)

applied in this case." (PSR at ¶ 21; *see* 18 USC § 924(c).) His criminal history category was VI. (PSR at ¶ 27.) The Probation Office calculated his guideline range at 262 to 327 months, plus 60 months consecutive. (*Id.* at 19.)

On December 21, 2010, attorney Jon York was appointed to represent Petitioner at sentencing. (Cr. ECF No. 120.) At the hearing on April 27, 2011, the Court sentenced him to a total of 240 months. (Min. Entry, Cr. ECF No. 146.) Ballew received the mandatory minimum sentences required by 18 U.S.C. §§ 924(c) and 924(e), imposed consecutively. His sentence also included three years of supervised release and a $300 special assessment. (*Id.*) Petitioner timely appealed, Cr. ECF No. 149, and the Sixth Circuit Court of Appeals affirmed the judgment on August 6, 2012, *United States v. Ballew*, 491 F. App'x 589 (6th Cir. 2012).

### B. Case Number 13-cv-1198

On June 24, 2013, Petitioner moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF Nos. 1–2.) He filed a memorandum of law on January 21, 2014, ECF No. 9, and the government filed its response in opposition on September 1, 2014, ECF No. 18. Ballew has also filed a reply, ECF No. 21, and an addendum in support of the current petition, ECF No. 22. The inmate advances numerous arguments, including multiple claims of ineffective assistance counsel and multiple arguments challenging his status as an armed career criminal under 18 U.S.C. § 924(e). (ECF Nos. 9, 22.) He also requests an evidentiary hearing. (ECF No. 2 at 41.)

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

3

the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

Generally speaking, "[d]efendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). A § 2255 motion is no substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). Constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the petitioner demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Claims of ineffective assistance of counsel, however, are not subject to the ordinary rules of procedural default, as "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "[i]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."

*United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (quoting *Massaro*, 538 U.S. at 504)).

After a § 2255 motion is filed, the Court reviews it, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Cases in the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977). A defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and a § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and,

consequently, fails to state a viable claim, *Ryals v. United States*, No. 1:05-cv-238, 2009 WL 595984, *5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, No. 1:05-cv-317, 2008 WL 2811902, * 1 (E.D. Tenn. July 18, 2008).

## III. ANALYSIS

### A. The Armed Career Criminal Act

Ballew presents several different claims arguing that he was improperly sentenced under the Armed Career Criminal Act ("ACCA"). The ACCA imposes a mandatory minimum sentence of fifteen years for defendants who are convicted of violating 18 U.S.C. § 922(g) and have "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . ." 18 U.S.C. § 924(e)(1). The Act defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B).

### 1. *Johnson* claim

On June 27, 2016, Petitioner filed an addendum to his § 2255 petition seeking review under *Johnson v. United States*, 133 S. Ct. 2551 (2015).[3] (ECF No. 22.) He argues that his juvenile convictions for aggravated robbery and attempted aggravated robbery no longer qualify as predicate convictions under the ACCA in light of *Johnson*. (ECF No. 22 at 1.) In that case,

---

[3] In *Welch v. United States*, the Supreme Court held that its ruling in *Johnson* "announced a substantive rule that has retroactive effect in cases on collateral review," allowing Ballew to raise a *Johnson* claim in his habeas petition. 136 S. Ct. at 1268.

the Supreme Court struck down as void for vagueness the ACCA's residual clause, which qualified as a "violent felony" any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court made clear that its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2563. These other, unaffected sections of the ACCA are commonly referred to as the "use-of-force clause" (§ 924(e)(2)(B)(i)) and the "enumerated-offense" clause (the first portion of § 924(e)(2)(B)(ii)). *United States v. Priddy*, 808 F.3d 676, 687 (2015).

*Johnson* has no bearing on Ballew's case because he was not sentenced under the residual clause of the ACCA. The Sixth Circuit has "held that a Tennessee conviction for robbery qualifies as a violent felony under the ACCA's use-of-force clause." *Id.* at 686 (citing *United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014)). "More recently, [the court] held . . . that the Supreme Court's recent decision in *Johnson* 'did not affect the "use of physical force clause"' and affirmed a defendant's ACCA-enhanced sentence because his prior Tennessee robbery conviction qualified as a violent felony under the use-of force clause." *Id.* (quoting *United States v. Kemmerling*, 612 F. App'x 373, 376 (6th Cir. 2015)). The court also considered whether *Johnson* disrupted its holding in *Mitchell*:

> The *Mitchell* court found that under the categorical approach, a Tennessee robbery conviction is a violent felony under both the use-of-force clause and the residual clause. The conviction need only qualify as a violent felony under one of the clauses. Therefore, even in light of the Supreme Court's invalidation of the residual clause, this Court's determination remains unchanged that under the categorical approach, robbery in Tennessee is a predicate offense under the use of- force clause.

*Id.* Thus, Petitioner's convictions for aggravated robbery and attempted aggravated robbery qualify as predicate offenses independent of the ACCA's residual clause. *Johnson* does nothing to vitiate the validity of his sentence and his claim on this ground is DENIED.

### 2. Claims under *Alleyne* and *Descamps*

Ballew also avers that he is entitled to relief from his sentence pursuant to *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *Descamps v. United States*, 133 S. Ct. 2276 (2013). (ECF No. 9 at 10–11.) Both cases were decided after Petitioner's conviction became final following his direct appeal. "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989). The first exception is that "[n]ew substantive rules generally apply retroactively." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). "Second, new 'watershed rules of criminal procedure,' which are procedural rules 'implicating the fundamental fairness and accuracy of the criminal proceeding,' will also have retroactive effect." *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).

Ballew asserts that *Alleyne* and *Descamps* created new rules of constitutional law that applied retroactively to cases on collateral review. (ECF No. 21 at 13–17.) In *In re Mazzio*, 756 F.3d 487 (6th Cir. 2014), the Sixth Circuit directly addressed and rejected this argument with respect to *Alleyne*:

> "[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). Even assuming that *Alleyne* announced a new rule, we cannot identify any Supreme Court decision that makes *Alleyne*'s ruling retroactively applicable to cases on collateral review, nor does any language in *Alleyne* suggest that the Supreme Court was making the new rule it announced retroactively applicable to cases on collateral review. Therefore, any

new rule announced in *Alleyne* has not been made retroactive to cases on collateral review by the Supreme Court.[4]

*Id.* at 489–90 (footnotes omitted). Accordingly, Petitioner's reliance on *Alleyne* is misplaced and his claim on this ground is DENIED.

As for *Descamps*, the Sixth Circuit has noted that "[t]he Supreme Court in *Descamps* explained that it was not announcing a new rule, but was simply reaffirming the *Taylor/Shepard* approach, which some courts had misconstrued." *United States v. Davis*, 751 F.3d 769, 775 (6th Cir. 2014). This holding is not, however, dispositive to the retroactivity issue. "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416, (2007); *see also Hill v. McMackin*, 893 F.2d 810, 813–14 (6th Cir. 1989) ("*Teague* does not bar retroactive application of rules when the case does not announce a new rule."), *overruled on other grounds recog'd*, *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). An "old rule" is one that was "in existence at the time of [the petitioner's] conviction." *Whorton*, 549 U.S. at 415.

Using this framework, the Eleventh Circuit "ha[s] held that the rule in *Descamps* is not new and thus is retroactive in a first § 2255 motion case."[5] *In re Griffin*, 823 F.3d 1350, 1356

---

[4] While the Sixth Circuit has not explicitly held that *Alleyne* announced a new rule, several other circuits have held so but noted that the new rule has not been made retroactive to cases on collateral review. *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *see Mazzio*, 756 F.3d at 490 n.2 (citing *Simpson* and *Payne*).

[5] That court has also held, however, that "*Descamps* is not retroactive for purposes of a second or successive § 2255 motion." *In re Hires*, 825 F.3d 1297, 1303 (11th Cir. 2016). Other circuits that have considered *Descamps*' retroactivity have done so either in the context of successive § 2255 petitions or untimely initial petitions. *See Headbird v. United States*, 813 F.3d 1092 (8th Cir. 2016) (initial but untimely § 2255 petition); *Smith v. United States*, No. 15-73591, 2016 WL 7176662, at *1 (9th Cir. Dec. 9, 2016) (successive); *In re Jackson*, 776 F.3d 292 (5th Cir. 2015) (successive); *United States v. Montes*, 570 F. App'x 830, 831 (10th Cir. 2014)

(11th Cir. 2016) (citing *Mays v. United States*, 817 F.3d 728, 734 (11th Cir. 2016)). While the Sixth Circuit has not spoken in such explicit terms, it has briefly addressed this issue. In a case concerning a habeas petition brought under 28 U.S.C. § 2241, the court noted that "[t]he Government further concedes that *Descamps* and [*United States v.*] *Royal*[, 731 F.3d 333 (4th Cir. 2013)] apply retroactively."[6]  *Hill v. Masters*, 836 F.3d 591, 596 (6th Cir. 2016). The court then reversed the district court's denial of Hill's petition in part because he "received the [career offender] enhancement based on a prior conviction that a subsequent, *retroactive* change in Supreme Court jurisprudence reveals is not a predicate offense." *Id.* at 600 (emphasis added). Viewing this signaling by the Sixth Circuit together with the Eleventh Circuit's clearer precedent, the Court will evaluate Ballew's claim under *Descamps* on the merits, as the instant petition is his "first and only 28 U.S.C. § 2255 motion to vacate his sentence." *Mays*, 817 F.3d at 730.

In *Descamps*, the Supreme Court "clarifie[d] the analytical approach that sentencing courts must use to determine if a prior conviction is a predicate offense under the ACCA." *United States v. Mitchell*, 743 F.3d 1054, 1063 (6th Cir. 2014). "[C]ourts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood," in order to determine whether that conviction qualifies as a "violent

---

(untimely). *But see Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014) (affirming the denial of an initial § 2255 petition and noting in passing that "the Supreme Court has not made *Descamps* retroactive on collateral review").

[6] In *Royal*, "the Fourth Circuit applied *Descamps* to Maryland's second-degree assault statute . . . and concluded it was not a 'violent felony' under the ACCA because the statute defined assault more broadly than the generic crime." *Hill v. Masters*, 836 F.3d 591, 595 (6th Cir. 2016).

felony." *Descamps*, 133 S. Ct. at 2281. The Sixth Circuit has explained the discussion in *Descamps* thus:

> "[W]hen a prior conviction is for violating a so-called 'divisible statute,' " which "sets out one or more elements of the offense in the alternative," we may resort to a variant of the categorical approach "labeled (not very inventively) the 'modified categorical approach.' " *Descamps*, 133 S.Ct. at 2281. The modified categorical approach is a "tool" used in a "narrow range of cases" to identify which element formed the basis of a defendant's conviction when a statute bears multiple alternative elements. *Id.* at 2287. A court is therefore permitted to "go beyond the mere fact of conviction[,]" *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143, and may "consult a limited class of documents" to determine which alternative in a divisible statute gave rise to a conviction, and to compare that conviction to the offense under the ACCA. *Descamps*, 133 S.Ct. at 2281.

*Mitchell*, 743 F.3d at 1063. The specific holding in *Descamps* was "that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements" and also "criminalizes a broader swath of conduct than the relevant generic offense." 133 S. Ct. at 2281. In the context of the ACCA, this occurs where "an individual can violate the statute [of conviction] in a way that constitutes a violent felony and in a way that does not." *United States v. Johnson*, 707 F.3d 655, 659 (6th Cir. 2013).

The Sixth Circuit has previously considered Tennessee's robbery statutes, under which Ballew was convicted, and rejected a petitioner's argument that they run afoul of *Descamps* "as indivisible and overbroad." *Mitchell*, 743 F.3d at 1066. The court explained that Tennessee's robbery statutes are divisible, as they "criminalize the intentional taking of property from the person of another 'by violence *or* putting the person in fear.'" *Id.* at 1065. More importantly, "neither alternative element departs from the definitions provided in the 'use of physical force' clause. . . ." *Id.* at 1066. Therefore, the modified categorical approach is unnecessary. *See id.* at

1065 ("[I]f a statute is divisible . . . at least one, but not all of those alternative elements must depart from . . . the definitions provided in . . . the 'use of physical force' clause").

It does not matter which particular alternative presented in Tennessee's robbery statute served as the basis for each of Ballew's robbery convictions, as the statute as a whole does not "criminalize[] a broader swath of conduct than the relevant generic offense." *Descamps*, 133 S. Ct. at 2281. Because this necessary condition has not been satisfied, Ballew may find no relief from *Descamps* and his claim on this ground is DENIED on the merits.

### 3.     Other ACCA-related claim

Petitioner also argues that his juvenile convictions do not qualify as ACCA predicates and cites *United States v. Laferriere*, 399 F. App'x 65 (6th Cir. 2010). He raised the exact same argument on direct appeal and it was rejected by the Sixth Circuit. *United States v. Ballew*, 491 F. App'x 589 (6th Cir. 2012). "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *United States v. Brown*, 62 F.3d 1418, 1995 WL 465802, at *1 (6th Cir. Aug. 4, 1995) (Table). None exist here, and this claim is DENIED.

### B.     Ineffective Assistance of Counsel

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that a petitioner establish both deficient performance and actual prejudice.[7] *Id.* at 687. Deficient performance occurs where "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This is a high standard.

---

[7] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (parallel citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [*Strickland*, 466 U.S.] at 693. Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Id.*, at 687." *Richter*, 131 S. Ct. at 787–88 (parallel citations omitted); *see also id.* at 791–92 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("*Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

---

is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

[T]he Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S. Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 788.

### 1.      Plea negotiations

Attorney A. Russell Larson represented Ballew at all relevant stages before and during his trial. Petitioner advances multiple claims of ineffective assistance of counsel as to attorney Larson's representation at various stages. First, Petitioner complains that his attorney "failed to fully investigate all facts, all available options, and law relevant to his decision as to whether to enter into plea negotiations with the government, or proceed to trial." (ECF No. 9 at 3.) Ballew claims that because he "proceeded to trial due to Mr. Larson's deficient advisement, [he] thus was subjected to a far more severe sentence . . . ." (ECF No. 21 at 10.) The problem with this argument is that Petitioner cannot demonstrate that he suffered prejudice. Had Ballew pleaded guilty and received a favorable plea agreement with the government, including a reduction in his offense level for acceptance of responsibility, he would not have received a shorter sentence.

The Court sentenced Ballew to the mandatory minimum 180 month sentence required by the ACCA, followed by a mandatory minimum, consecutive sentence of 60 months established by 18 USC § 924(c). The government correctly points out that "Ballew received the absolute least sentence possible, with or without plea negotiations, and whether or not he had pled guilty

or was found guilty at trial."[8]  (ECF No. 18 at 12.)  This Court is "without the discretion to depart from a mandatory sentence imposed by Congress."  *United States v. Thomson*, 268 F. App'x 430, 437 (6th Cir. 2008) (regarding an ACCA-mandated fifteen year minimum sentence). This includes the consecutive sentence of 60 months, as "[§] 924(c)(1)(D)(ii) expressly prohibits any term of imprisonment imposed pursuant to § 924(c) from running concurrently with another term of imprisonment."  *United States v. Farrell*, 233 F. App'x 514, 517 (6th Cir. 2007). Petitioner therefore cannot satisfy the second prong of *Strickland* and his claim of ineffective assistance of counsel on this ground is DENIED.

### 2. Suppression hearing

Ballew also asserts that his counsel's representation during the suppression hearing constituted deficient performance.  (ECF No. 9 at 3.)  Larson filed a motion to suppress on behalf of Petitioner on March 25, 2010.  (Cr. ECF No. 57.)  The suppression hearing took place roughly three weeks later, Cr. ECF No. 65, and the Court denied the motion at the conclusion of the proof, Cr. ECF No. 66.  Ballew claims that he instructed Larson not to move forward with the motion and hearing, but the attorney disregarded these instructions and instead acted in furtherance of "his own interest which conflicted with those of the Movant."[9]  (ECF No. 2 at 15.) As unlikely as this contention may sound, the Court need not evaluate its truth because Petitioner cannot prove prejudice.  On the merits of the motion itself, Ballew argues that Larson "was unprepared and was not knowledgable [sic] of the specific laws that supported his arguments regarding the suppression hearing."  (ECF No. 9 at 3.)  This is irrelevant because the inmate

---

[8] Likewise, the period of supervised release following Petitioner's incarceration and the $300 special assessment imposed at sentencing would not have changed either.

[9] Petitioner does not identify what interest Larson purportedly had that conflicted with his own and motivated counsel to disobey his instructions.

claims that he instructed Larson not to make or argue the motion. The motion being denied put Petitioner in the exact same position he would have found himself in had the motion never been filed and argued; the evidence at issue remained admissible as far as the Fourth Amendment is concerned.

Ballew also appears to argue that Larson's alleged decision to move forward with the suppression hearing prejudiced him with regards to negotiating a plea agreement with the government. (ECF No. 2 at 24.) As explained above, however, Petitioner received the minimum sentence possible regardless of whether he had gone to trial or pleaded guilty. He therefore cannot prove prejudice on this ground and this claim is DENIED.

### 3. Failure to locate a potential witness

Moving on to the trial itself, Ballew's contention that attorney Larson provided ineffective assistance of counsel at this stage focuses on his failure to successfully locate and subpoena a potential witness and his subsequent failure to exclude hearsay statements made by this individual and elicited from other sources.[10] (ECF No. 2 at 18.) Ballew claims that attorney Larson "rendered ineffective assistance of counsel when he failed to secure the witness . . . by compulsory process." (ECF No. 2 at 16.) Petitioner's primary issue appears to be that the witness's unavailability at trial made it impossible to cross-examine her, a valid concern for a criminal defendant. (*See Id.* at 18.) But Larson's decision not to call or locate this witness does not constitute deficient performance under *Strickland*. This individual was an eyewitness who provided information to the police by calling 911 and speaking with officers at the scene.

---

[10] Petitioner refers to this person throughout his filings as the government's "key witness." (ECF No. 9 at 5.) In the trial transcript, Larson identifies her as "Tosha Henke." (Cr. ECF No. 162 at 22:1.)

Larson's decision not to call this person to the stand, which would have allowed the government to elicit more incriminating testimony, is a reasonable one.

"Even if in retrospect the [defense attorney's] strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Larson's decision was not so unreasonable; it "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner also has not proved prejudice as to this issue. It appears highly unlikely that the result of the trial would have been different had this witness testified at trial, especially "in light of the overwhelming evidence of Ballew's guilt, including two confessions that the backpack and its contents [including the firearm, marijuana, and Ballew's driver's license] were his." *Ballew*, 491 F. App'x at 591.

### 4.    The 911 call

Petitioner argues several times that the recording of a 911 call admitted at trial should have been excluded pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), and that his counsel should have objected on those grounds. (ECF No. 2 at 16–19.) "In the 911 call, a woman yelled in an agitated manner about someone putting a gun in her face." *Ballew*, 491 F. App'x at 591. In *Crawford*, the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54. While the Court did not provide an overarching definition of "testimonial," it later offered the following clarification:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such

> ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). In *Davis*, the Court observed that "[a] 911 call . . . and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." *Id.* at 827. Accordingly, it held that a 911 call in which the caller was informally and frantically narrating present events, "call[ing] for help against a bona fide physical threat," and providing information relevant "to *resolve* the present emergency" was nontestimonial under *Crawford*. *Id.*

The statement at issue in this case is also nontestimonial and bears many similarities to the 911 call in *Davis*. It was provided in the present tense, in a frightened manner, seeking help from the police in an emergency, not providing them with information to strengthen a later prosecution. For this reason, Ballew cannot prove that he suffered prejudice when attorney Larson failed to object to the 911 call. The evidence would have been admitted over an objection because it presents no problems under the Confrontation Clause.[11] This claim is DENIED.

### 5. Officer Weems' testimony

Petitioner takes issue with his attorney's failure to request a curative instruction after his objection to a portion of Officer Weems' testimony was overruled by the Court.[12] (ECF No. 2 at

---

[11] On direct appeal, the Sixth Circuit noted in passing that "there is considerable reason to doubt that the woman's statement was testimonial." *Ballew*, 491 F. App'x at 591.

[12] Ballew further argues that Larson did not argue the objection correctly. (ECF No. 2 at 19.) Petitioner cannot prove prejudice here because the objection would have been overruled regardless, and the Sixth Circuit affirmed the ruling on this particular objection on direct appeal. *Ballew*, 491 F. App'x at 591 (reviewing it for plain error).

19.)  Larson objected to hearsay when the officer testified that an eyewitness at the scene yelled "he's got a gun."  (Cr. ECF No. 161 at 31:21–22.)  The Court overruled his objection as the statement qualified as an excited utterance.  (*Id.* at 32:4–5; *see* Fed. R. Evid. 803(2).)  "To prevail on a claim of ineffective assistance for counsel's failure to request a curative instruction, a petitioner would need to show prejudice by demonstrating a reasonable probability that the omission of such instruction affected the outcome of the trial."  *Gann v. Lester*, No. 4:13-CV-71-HSM-CHS, 2016 WL 4690399, at *10 (E.D. Tenn. Sept. 7, 2016).  Petitioner asserts that he suffered prejudice due to this failure, but does not explain how.  Given the difficulty of proving prejudice in this situation, Ballew's lack of specificity stifles his claim here. [13]  *See Shafer v. Wilson*, 364 F. App'x. 940, 951 (6th Cir. 2010) (finding no prejudice "given the unlikelihood that the omission of such instruction affected the outcome of the trial").

### 6.     Petitioner's clothing

Ballew "contends that counsel rendered ineffective assistance of counsel when he failed to obtain civilian clothing for Movant."  (ECF No. 2 at 18.)  The Supreme Court has held that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes."  *Estelle v. Williams*, 425 U.S. 501, 512 (1976).  Petitioner admits that this was not the case at his trial.  Rather, on "the first day of trial he was forced to wear the wrinkled, haggered [sic] clothing from the day he was subsequently arrested."  (ECF No. 2 at 18.)  That petitioner wore less than ideal civilian clothing for part of his trial does not run afoul of the Constitution on these grounds, nor does it satisfy *Strickland*'s high bar.  *See Jones v. United States*, No. 1:05-CR-69, 2011 WL 1557928, at *5 (E.D. Tenn. Apr. 25,

---

[13] Similarly, Ballew briefly argues that "Mr. Larson should have moved for a mistrial on several instances, but did not, thus causing a violation of Mr. Ballew's due process rights."  (ECF No. 2 at 19.)  Again, Petitioner does not provide any more detail and fails to meet his burden under *Strickland*.

2011) (denying a petitioner's ineffective assistance of counsel claim where "his trial counsel failed to object to him having to stand trial in prison clothing," but he failed to prove prejudice). Accordingly, this claim is DENIED.

"A claim of ineffective assistance cannot be carved up into little segments. Isolated shortcomings do not make a lawyer ineffective; it is the entire course of the representation that matters." *Duarte v. United States*, 81 F.3d 75, 77 (7th Cir. 1996). While attorney Larson's representation may not have been perfect, "the goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687). Larson's representation certainly fell within these wide parameters despite Petitioner's many claims to the contrary.

### 7. Sentencing counsel

Ballew also insists that he received ineffective assistance of counsel at the sentencing phase. (ECF No. 21 at 2–7.) Generally, challenges to sentencing cannot be made for the first time in a § 2255 motion. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *Grant v. United States*, 72 F.3d 503, 505–06 (6th Cir. 1996)). They are waived unless made on direct appeal. *Id.* However, "challenges that cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Id.* "A defendant facing the possibility of incarceration has a Sixth Amendment right to counsel at all 'critical stages' of the criminal process, and a sentencing hearing is one type of 'critical stage' at which the right to counsel attaches." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Benitez v. United* States, 521 F.3d 625, 630 (6th Cir. 2008)). An attorney's "failure to object to an error at sentencing or failure to raise a viable

argument that would reduce [the] client's sentence may constitute deficient performance." *McPhearson*, 675 F.3d at 559. However, the "'strong presumption' that an attorney 'render[s] adequate assistance and [makes] all significant decisions in the exercise of reasonable professional judgment,'" remains at the sentencing phase. *Maiyo v. United States*, 576 F. App'x 567, 570 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689–90).

Petitioner avers that his sentencing counsel, attorney Jon York, did not present appropriate and compelling case law to the Court regarding the issue of his juvenile offenses being used as predicate offenses for the ACCA. (ECF No. 9 at 9.) Again, Petitioner's argument fails because he cannot demonstrate prejudice. On direct appeal, the Sixth Circuit affirmed the application of the ACCA in Ballew's case. *Ballew*, 491 F. App'x at 592. Therefore, even if York's representation did constitute deficient performance, Ballew did not receive a longer or harsher sentence as a result. More broadly, he suffered no prejudice at the sentencing phase whatsoever, as he received the shortest sentence allowed by applicable law. Accordingly, his claim of ineffective assistance on this ground is DENIED.

Petitioner complains that attorney York "conceded before the sentencing court Movant's adult attempted aggravated robbery was properly constituted as a predicate violent felony under the Armed Career Criminal Act enhancement." (ECF No. 2 at 27.) He further takes issue with his attorney's argument at the sentencing hearing based on *United States v. Laferriere*, 399 F. App'x 65 (6th Cir. 2010).[14] (*Id.* at 28.) These grounds are insufficient to satisfy *Strickland*'s high standard. "[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v.*

---

[14] Petitioner's exact argument is not clear here, but it appears that he disapproves of the way counsel discussed the case, rather than the mere fact that counsel cited it, as he relies on *Laferriere* himself in one of his arguments in the instant petition.

*United States*, 538 U.S. 500, 505 (2003). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Without delving too far into the extent of York's investigation of the law and facts in this case, the Court concludes that both of the decisions complained of above were reasonable strategic choices under the circumstances. *See Lott v. Trammell*, 705 F.3d 1167, 1187 (10th Cir. 2013) (stating that counsel's concessions did not reflect deficient legal representation because the concessions boosted counsel's credibility). Accordingly, these claims are DENIED.

### 8.     Appellate counsel

Attorney York also represented Petitioner on direct appeal. Ballew "contends that counsel denied him of his full direct appeal process by failing to file an en banc petition, and then not proceeding on a writ of certiorari on behalf of Mr. Ballew." (ECF No. 2 at 29.) "A defendant is entitled to effective assistance of counsel on the first appeal of his conviction where such an appeal is a matter of right." *McNeal v. United States*, 54 F.3d 776, 1995 WL 290233, at *2 (6th Cir. May 11, 1995) (Table). The Sixth Circuit has held that "there is no constitutional right to counsel in seeking rehearing en banc." *McNeal*, 1995 WL 290233, at *2. Similarly, there is no "constitutional right to counsel in pursuing an application for discretionary review (certiorari) in the Supreme Court of the United States." *Id.* at *1 (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)). Where a defendant "had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel . . . ." *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982). Therefore, Ballew's claims under *Strickland* based on York's failure to pursue these discretionary appeals must fail and are hereby DENIED.

## IV.    CONCLUSION

Because Ballew's claims are without merit, the Petition is hereby DISMISSED and his request for an evidentiary hearing is DENIED.

## V.    APPEAL ISSUES

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.  The COA must also indicate "which specific issue or issues satisfy" the required showing.  28 U.S.C. § 2253(c)(3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).  A COA does not require a showing that the appeal will be successful.  *Id.* at 337.  Courts should not, however, issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (per curiam).

In this case, for the reasons previously stated, the issues raised by Petitioner lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the

prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. The Rule requires a party seeking pauper status on appeal to first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). The Rule also provides, however, that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, for the same reasons it denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[15]

**IT IS SO ORDERED** this 6th day of March, 2017.

s/ J. DANIEL BREEN_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[15] If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.